# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| RAFAEL MENESES,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>　　　　　Defendant. | Case No. 2:13-cv-01402-GMN-GWF<br><br>**FINDINGS AND RECOMMENDATION**<br><br>Motion to Remand (#18) |

This matter is before the Court on Plaintiff Rafael Meneses' Complaint for Review of Final Decision of the Commissioner of Social Security (#3), filed on September 6, 2013. Defendant's Answer (#15) was filed on November 17, 2013, as was a certified copy of the Administrative Record (the "A.R."). *See Notice* (#16). This matter has been submitted to the undersigned United States Magistrate Judge for Findings and Recommendations on Plaintiff's Motion for Remand (#18), filed on December 9, 2013. The Acting Commissioner filed her Cross Motion to Affirm (#21) and Opposition to Plaintiff's Motion for Remand (#22) on February 7, 2014.

## BACKGROUND

Plaintiff seeks judicial review of Administrative Law Judge Michael Kennett's ("ALJ") decision dated November 23, 2011. *See* Administrative Record ("A.R.") 24-33. The issue before the Court is whether the ALJ erred at step four of his analysis by failing to address a proffered limitation when determining Plaintiff's residual functional capacity ("RFC") and by failing to determine whether alcoholism was a contributing factor material to the determination of disability.

. . .

### A. Procedural History

Plaintiff filed a Title XVI application for supplemental security income ("SSI") on May 17, 2006, alleging disability beginning July 1, 2005. A.R. 92. The application was denied initially, and upon administrative reconsideration. A.R. 112-115, 119-121. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A.R. 124. At a hearing before ALJ Kennett on September 23, 2009, Plaintiff appeared with his attorney, Diane Haar, and testified in support of his claim. A.R. 68-84. ALJ Kennett issued an unfavorable decision on March 18, 2010. A.R. 92-98.

On October 15, 2010, the Appeals Council granted Plaintiff's request for review of the ALJ's decision under the substantial evidence and new and material evidence provision of the Social Security Act ("SSA") regulations. A.R. 102-107. The Appeals Council vacated the decision and remanded the case to an ALJ because it found that the RFC assessment relied on a treating source opinion that was performed prior to Plaintiff's diagnosis of cirrhosis of the liver. A.R. 105. The ALJ also remanded the case for evaluation of the new evidence submitted by Plaintiff. *Id*.

ALJ Kennett conducted a second hearing on November 1, 2011. A.R. 46-67. Plaintiff appeared with his attorney, Brandon Wright, and testified in support of his claims. *Id*. Jack Dymond, a vocational expert, also appeared at the hearing. *Id*. Plaintiff amended his alleged onset date from July 1, 2005 to May 17, 2006, the protective filing date of his current application. *Id*. In a decision dated November 23, 2011, ALJ Kennett found Plaintiff was not disabled within the meaning of the SSA. *Id*. Plaintiff timely filed a Request for Review, which was denied by the Appeals Council on May 2, 2013. A.R. 5-11. When the Appeals Council declined to review the ALJ's decision, the decision became final. *Id*. Plaintiff then filed this action for judicial review pursuant to 42 U.S.C. 405(g). This matter has been referred to the undersigned for a report of findings and recommendations under 28 U.S.C. §§ 636 (b)(1)(B) and (C).

### B. Factual History

Plaintiff Rafael Meneses was born on May 31, 1968, in El Paso, Texas. A.R. 50, 97, 412. He was almost 38 years old on his amended alleged onset date. A.R. 25. He is 5'4" and weighed 152 pounds. A.R. 53. He is a divorced father of four and resides with his two minor children ages nine and twelve. A.R. 51, 676. Plaintiff indicated that he completed the tenth grade in special education and has

had no other formal education or vocational job training. A.R. 51, 261. He testified that he cut down to about three cigarettes a day and has not drank alcohol for about six years prior to the date of his hearing. A.R. 57.

With regard to daily activities, Plaintiff testified that he drives, but not very often because it hurts his feet. A.R. 58, 227. His children help with the cooking and housecleaning and he refrains from outside chores such as pet care and yard work. A.R. 59-60. He reads, watches television and movies with his children and helps them with their school work. A.R. 60-61. He testified that he can only concentrate on an hour long television show for approximately seven to eight minutes. A.R. 65. Once in a while he will attend school events and activities at the Boys and Girls Club with his children. A.R. 61-62. Since the last hearing, he testified that he is no longer able to walk his children two blocks to school. A.R. 63. With regard to personal care, Mr. Meneses indicated that he can bathe by himself but he cannot shower. A.R. 225. He reported no problems dressing, shaving, and feeding himself. A.R. 225.

Prior to 2005, Plaintiff worked as a roofing laborer and landscaping laborer. A.R. 249. He also worked as a cook/dishwasher intermittently from 1991 to 2000. A.R. 261. He indicated that he quit working in 2005 due to diabetic neuropathy in his feet. A.R. 52. Mr. Meneses has not had substantial gainful employment ("SGA"), however, since 1989 and therefore has no record of past relevant work. A.R. 51-52, 199. At the time of the hearing, Plaintiff was taking Metformin, Hydrocodone Lortab 10, and 20 milligrams of Paroxetine, which he stated made it difficult for him to function. A.R. 54. He stated that he is unable to work due to lower back pain, which causes a numbness and tingling in his left leg, and a bladder problem for which he wears a pad. A.R. 55-56. He stated that he uses the restroom ten to eleven times a day to urinate, and has approximately three accidents a day. A.R. 64-65. He also testified that he was having a lot of anxiety and panic attacks, which affect his concentration and make him want to sleep. A.R. 56. He estimated suffering from approximately three panic attacks a week, each lasting about ten to twenty minutes. A.R. 65.

On July 25, 2005, Plaintiff was admitted to Sunrise Hospital and Medical Center for alcohol withdrawal, alcohol withdrawal seizure, and alcohol abuse. A.R. 267-69. Medical notes indicate that he had been in "an outside of the hospital rehab program." A.R. 270. He was administered Thiamine,

Serax, IV hydration, Librium, and Activan. A.R. 271. He was also given a Texas catheter because he was unable to control his urine. *Id.* He was discharged home in stable condition with severe alcohol withdrawal with delirium tremens, hypokalemia, thrombocytopenia, and fever. A.R. 270.

On October 5, 2006, Plaintiff presented to Dr. Steven E. Gerson for a consultative internal medicine evaluation. A.R. 277. Dr. Gerson stated that Plaintiff's reliability was average. *Id*. Plaintiff indicated that he has had high blood sugars on and off for several years, but was told that he was not diabetic when they hospitalized him fifteen months prior. *Id*. He indicated the he has had regular foot pain for several years that occurs with rest as well as exertion, and has pain, weakness, and numbness of both legs and feet. Plaintiff further indicated that "[h]e is an ex-alcohol drinker. He was drinking beer everyday heavily for eight years. He quit approximately 15 months [ago], at the time of his hospitalization." *Id*. Dr. Gerson diagnosed Plaintiff with diabetes and chronic pain of the feet and legs. A.R. 280. The doctor provided that Plaintiff has no manipulative limitations, but due to decreased sensation and back pain, he proffered environmental limitations including, only occasional contact with moving machinery and avoidance of heights. A.R. 282.

In a physical residual functional capacity assessment dated October 25, 2006, Loretta Nye, a state agency decision maker, opined that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand/walk 6 hours in an 8-hour day, and sit for 6 hours in an 8-hour day. A.R. 285. She limited Plaintiff to occasional climbing, balancing, stooping, kneeling, crouching, crawling, and frequent balancing. A.R. 286. In making this finding she stated that "[t]he alleged severity in the functional limitations as it relates to squatting, lifting, standing, bending, reaching, walking, sitting and kneeling cannot be fully supported by the overall data, including the most recent MD objective examination findings," which was completed by Dr. Gerson. A.R. 289, 290. She further noted that Dr. Gerson's limitations or restrictions were different from her own findings, indicating that she would change Plaintiff's avoidance of heights limitation from never to occasional. A.R. 290. On November 20, 2006, Sergio R. Bello, a state agency medical consultant, affirmed Ms. Nye's assessment. A.R. 292.

On November 2, 2006, Plaintiff presented to the University Medical Center ("UMC") for a nerve conduction/EMG test. A.R. 328. The findings suggested a peripheral neuropathy. *Id*. On July

12, 2007, Plaintiff was seen in the UMC emergency room and was found to have a "Jones fracture of his fifth metatarsal basically transverse fracture the base of fifth metatarsal and a fractured acute dorsal navicular avulsion fracture of his right foot." A.R. 301. He was subsequently sent to an orthopedic doctor and was informed that because he had peripheral neuropathy, they could not put a cast on his foot because he might not be able to discern a painful area that might be rubbing or having vascular compromise. *Id*.

On July 31, 2007, Plaintiff presented to Dr. Rucker for a follow-up. *Id* Upon review of Plaintiff's systems, Dr. Rucker stated that "[t]he patient has decreased sensation but [is] able to elucidate pain." Dr. Rucker assessed Plaintiff with a fractured right foot and ankle and peripheral neuropathy. A.R. 301.

On May 12, 2008, Plaintiff presented to Dr. Muhammad S. Ghani for leukopenia and thrombocytopenia. A.R. 412-13. Dr. Ghani performed a work-up of Plaintiff including a peripheral smear, B12, folic acid and hepatitis panel. A.R. 413. He opined that Plaintiff had "leukopenia and thrombocytopenia, history of liver disease, history of heavy alcohol abuse, which can contribute to leukopenia and thrombocytopenia, history of diabetes, and neuropathy." *Id*.

On November 25, 2008, Plaintiff presented to Southwest Medical Associates for a check-up. A.R. 397. Dr. Norris stated that "[a]lthough pt has peripheral neuropathy to lower extremities, pt can perform tasks that allow him to sit at a desk." A.R. 398.

On June 4, 2009, Plaintiff was seen by Dr. Sharma for complaints of recent upper GI bleeding. A.R. 670. He performed an EGD with endoscopic variceal ligation. *Id*. In January 2010, Plaintiff presented to Dr. Sharma for a follow-up in which it was reported that Plaintiff was well and denied any nausea, vomiting, or any hematemesis or melena. A.R. 670. The doctor assessed Plaintiff with cirrhosis possibly alcoholic liver disease with esophageal varices, cirrhosis of the liver felt to be secondary to alcohol, and diabetes. A.R. 671.

On December 17, 2009, Plaintiff went to Valley Hospital Medical Center for abdominal pain. A.R. 525-527. Work-up in the emergency room revealed gallstones, enhancing liver lesions like hemangioma, splenomegaly, possible cirrhosis, but no appendicitis and normal bowel-gas pattern. *Id*. Plaintiff was diagnosed with gallstones and a fatty infiltration of the liver consistent with a

hemangioma. A.R. 527. A CT scan of Plaintiff's abdomen also revealed splenomegaly with mild varices, which is representative of early cirrhosis. A.R. 529.

On April 12, 2010, Plaintiff presented to Dr. Ghani for a follow-up visit. A.R. 559. Dr. Ghani diagnosed Plaintiff with leucopenia and thrombocytopenia secondary to hypersplenism, history of esophageal varices, history of alcoholic liver disease, history of alcohol abuse, iron deficiency, secondary to bleeding, and history of hypertensions and diabetes. A.R. 559.

On April 23, 2010, Plaintiff had an orthopedic evaluation at Nevada Orthopedic and Spine Center due to his alleged left shoulder pain. A.R. 664. Dr. Chien assessed probable rotator cuff tendinitis. *Id*. An MRI of his left shoulder showed left acromioclavicular degenerative joint disease with subclavicular and subacromial spur formation. A.R. 665.

On March 8, 2011, Plaintiff presented to Southwest Medical Associates Urgent Care with complaints of lower back pain that clinically presented consistent with sciatica. A.R. 635. An MRI of his lumbar spine on April 15, 2011 showed slight degenerative change. A.R. 626. An MRI of his lumbar spine taken on October 20, 2011 showed degenerative change most notable at L4-5 where posterior annular tear is seen with associated small disk protrusion versus extrusion resulting in mild canal narrowing. A.R. 693.

On June 24, 2011, Plaintiff presented to Dr. Lagstein for a consultative examination. A.R. 676. Mr. Meneses indicated that he had been a recovering alcoholic for the past nine years and smoked only five cigarettes a day. *Id*. He also indicated that he used to inject heroin intravenously thirteen years prior. *Id*. The doctor noted that Plaintiff's "neurological examination did not reveal any focal or motor deficits; however, sensory examination was consistent with mildly diminished pinprick and light touch in both lower extremities." A.R. 677. He also found that Plaintiff's "station and gait were normal. Handgrip was normal bilaterally for this left-handed individual. Dexterity and fine movements were normal. Muscle strength was 5/5 throughout. Tandem gait and tiptoeing were normal." A.R. 678. Dr. Lagstein opined that Plaintiff had a longstanding history of alcoholism, in remission per Plaintiff's claim, and multiple complications secondary to alcoholism including cirrhosis of liver, hypersplenism, leukopenia and thrombocytonpenia secondary to hypersplenism, diabetes mellitus type II, peripheral diabetic sensory neuropathy, protal hypertension, esophageal varices, and anemia secondary to

hematemesis. *Id*. He also opined that "claimant's medical condition is clearly related to alcoholism and its complications." *Id*. In his medical source statement, Dr. Lagstein found Plaintiff capable of tolerating exposure to moving mechanical parts, and limited Plaintiff to occasional exposure to extreme cold and extreme heat and no exposure to vibrations and very loud noises, such as a jackhammer. A.R. 684.

### C. ALJ's Decision

In his decision dated November 23, 2011, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act from May 17, 2006, through the date of his decision, because the Plaintiff possessed sufficient residual functional capacity ("RFC") to perform other work. A.R. 24, 27. In reaching this conclusion, the ALJ followed the five-step process set forth in 20 C.F.R. § 404.1520(a)-(f). First, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from May 17, 2006, the protective filing date, through the date of his decision. A.R. 24. Second, he found that the Plaintiff has severe impairments including "a longstanding history of alcoholism, in remission per claimant; situational depression without suicidal ideation; and/multiple complications secondary to alcoholism including the following: cirrhosis of liver; hypersplenism; leukopenia and thrombocytopenia secondary to hypersplenism; diabetes mellitus type II; peripheral diabetic sensory neuropathy; portal hypertension; esophageal varices; and anemia secondary to hematemesis." A.R. 32. At step three, the ALJ considered Plaintiff's impairments and found that they do not manifest the necessary medical findings or occur with the necessary frequency to meet the requirements of Listing 5.05 (chronic liver disease), Listing 11.14 (peripheral neuropathies), Listing 3.09 (cor pulmonale secondary to chronic pulmonary vascular hypertension), Listing 7.02 (chronic anemia), or any other Listing. A.R. 26. He also concluded that there were no listing criteria in Appendix 1 specific to the evaluation of diabetes mellitus, and Plaintiff's impairment from diabetes mellitus did not meet the requirements under the listings for other body systems. *Id.*

At step four of his analysis, the ALJ found that Plaintiff had the residual functional capacity to, "at the very least, lift a maximum of 10 pounds at one time; to stand and/or walk for 2 hours in an 8-hour workday; and to sit for 6 hours in an 8-hour workday; no significant stooping; and with good use of his hands and fingers for fine manipulations." A.R. 32. He found these limitations consistent with

sedentary work as defined in 20 C.F.R. §§ 404.1567(d) and 416.967(d). A.R. 27. The ALJ further found that Plaintiff had no substantial gainful employment since 1989, and thus had no past relevant work which he could perform. A.R. 25.

At step five, after considering Plaintiff's age, education, work experience, and the residual functional capacity, ALJ Kennett found Plaintiff capable of performing other jobs that exist in significant numbers in the national economy. A.R. 32. In support of this finding, the ALJ relied on the Medical Vocational Rule 201.24 (20 C.F.R. 404.1520(g) and 416.920(g). A.R. 32. In the alternative, ALJ Kennett also stated that:

> Assuming *arguendo*, that the claimant's subjective complaints of symptoms and functional limitations could be credited, and the claimant was incapable of performing any jobs that exist in significant numbers in the national economy, the claimant's alcoholism would be a contributing factor material to any finding that the claimant was 'disabled,' and, in accordance with section 223(d)(2)(C) and 1614(a)(3)(J) of the Social Security Act, 20 C.F.R. 404.1535, and 20 C.F.R. 416.935, the claimant could not be considered disabled.

A.R. 32-33.

## DISCUSSION

### I. Standard of Review

A federal court's review of an ALJ's decision is limited to determining only (1) whether the ALJ's findings were supported by substantial evidence and (2) whether the ALJ applied the proper legal standards. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Delorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir. 1991). The Ninth Circuit has defined substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Woish v. Apfel*, 2000 WL 1175584 (N.D. Cal. 2000) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)); *see also Lewis v. Apfel*, 236 F.3d 503 (9th Cir. 2001). The Court must look to the record as a whole and consider both adverse and supporting evidence. *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Where the factual findings of the Commissioner of Social Security are supported by substantial evidence, the District Court must accept them as conclusive. 42 U.S.C. § 405(g). Hence, where the evidence may be open to more than one rational interpretation, the Court is required to uphold the decision. *Moore v. Apfel*, 216 F.3d 864, 871 (9th Cir. 2000) (*quoting Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)). *See also Vasquez v.*

*Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court may not substitute its judgment for that of the ALJ if the evidence can reasonably support reversal or affirmation of the ALJ's decision. *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

It is incumbent on the ALJ to make specific findings so that the court need not speculate as to the findings. *Lewin*, 654 F.2d at 635 (citing *Baerga v. Richardson*, 500 F.2d 309 (3rd Cir. 1974)). In order to enable the court to properly determine whether the Commissioner's decision is supported by substantial evidence, the ALJ's findings "should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Lewin*, 654 F.2d at 635.

In reviewing the administrative decision, the District Court has the power to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In the alternative, the District Court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.*

## II.   Disability Evaluation Process

To qualify for disability benefits under the Social Security Act, a claimant must show that:

(a) he/she suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less that twelve months; and

(b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *see also* 42 U.S.C. § 423(d)(2)(A).

The claimant has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995), *cert. denied*, 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than

12 months." 42 U.S.C. § 423(d)(1)(A).  If the claimant establishes an inability to perform his or her prior work, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful work that exists in the national economy.  *Batson*, 157 F.3d at 721.

### III.  Analysis of the Plaintiff's Alleged Disability

Social Security disability claims are evaluated under a five-step sequential evaluation procedure. *See* 20 C.F.R. § 404.1520(a)-(f).  *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001).  The claimant carries the burden with respect to steps one through four.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If a claimant is found to be disabled, or not disabled, at any point during the process, then no further assessment is necessary.  20 C.F.R. § 404.1520(a).  Under the first step, the Secretary determines whether a claimant is currently engaged in substantial gainful activity. *Id.* § 416.920(b).  If so, the claimant is not considered disabled. *Id.* § 404.1520(b).  Second, the Secretary determines whether the claimant's impairment is severe. *Id.* § 416.920(c).  If the impairment is not severe, the claimant is not considered disabled. *Id*. § 404.152(c).  Third, the claimant's impairment is compared to the "List of Impairments" found at 20 C.F.R. § 404, Subpt. P, App. 1.  The claimant will be found disabled if the claimant's impairment meets or equals a listed impairment. *Id.* § 404.1520(d).  If a listed impairment is not met or equaled, the fourth inquiry is whether the claimant can perform past relevant work.  *Id*. § 416.920(e).  If the claimant can engage in past relevant work, then no disability exists.  *Id.* § 404.1520(e).  If the claimant cannot perform past relevant work, the Secretary has the burden to prove the fifth and final step by demonstrating that the claimant is able to perform other kinds of work.  *Id.* § 404.1520(f).  If the Secretary cannot meet his or her burden, the claimant is entitled to disability benefits.  *Id.* § 404.1520(a).  Plaintiff now asserts that the ALJ erred at step four of his analysis by failing to address a proffered limitation when determining Plaintiff's residual functional capacity ("RFC") and by failing to determine whether alcoholism was a contributing factor material to the determination of disability.

### A.  ALJ Kennett did not err at step four in determining Plaintiff's RFC

In *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001), the Ninth Circuit set forth the rules regarding the weight that is to be accorded to different types of medical opinions:

. . .

> Title II's implementing regulations distinguish among the opinions of three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (non-examining [or reviewing] physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *see* 20 C.F.R. §404.1527(d). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Lester*, 81 F.3d at 830. 20 C.F.R. § 404.1527(d). In addition, the regulations give more weight to opinions that are explained than to those that are not, *see* 20 C.F.R. § 404.1527(d)(3), and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists.

"Although the contrary opinion of a non-examining medical expert does not alone constitute a specific legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence that is consistent with other independent evidence in the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (citing *Magallanes v. Bowen*, 881 F.2d 747, 752 (9th Cir. 1989)). Like the opinion of a treating doctor, "the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). An ALJ need not specifically recite that he rejected a physician's opinion for enumerated reasons. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (Holding that an ALJ judge need not cite the magic words, "I reject the physician's opinion because..."). Rather, a reviewing court may read the findings and opinion and draw specific and legitimate inferences. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (finding that courts are not deprived from their faculties "for drawing specific and legitimate inferences from the ALJ's opinion).

Furthermore, an ALJ need not agree with everything contained in a medical opinion and can consider some portions less significant than others when evaluated against other evidence in the record. *See Magallanes v. Bowen,* 881 F.2d 747, 753 (9th Cir. 1989). The fact that the medical opinions agree as to the claimant's diagnosis does not require that the opinions be accepted, where the opinions disagree as to the degree of limitation caused by the claimant's impairments. *See Ruff v. Astrue*, 523

1  F.Supp.2d 1232, 1240 (D. Kan. 2007).  The Ninth Circuit has held that in interpreting the evidence and
2  developing the record, the ALJ need not discuss every piece of evidence.  *See Howard ex Rel. Wolff v.*
3  *Barhnart*, 341 F.3d 1006, 1010 (9th Cir. 2003).  When there are conflicts between the opinions of
4  treating and examining doctors, it is the ALJ's job to resolve the conflicts.  *See Andrews v. Shalala*, 53
5  F.3d 1035, 1041 (9th Cir. 1995); *See also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) (It is
6  clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual
7  functional capacity).

8  Plaintiff argues that the ALJ did not articulate legitimate reasons based on substantial evidence
9  to reject Dr. Gerson's proffered limitations against moving machinery or heights.  By finding that
10 Plaintiff had the RFC to perform sedentary work, the ALJ determined that Plaintiff could lift a
11 maximum of 10 pounds at one time, stand and/or walk for 2 hours in an 8-hour workday, and sit for 6
12 hours in an 8-hour workday with no significant stooping and good use of his hands and fingers for fine
13 manipulation.  A.R. 32.  Dr. Gerson, however, opined that Plaintiff could lift 20 pounds occasionally
14 and 10 pounds frequently, stand and/or walk for 6 hours, sit for 6 hours, with occasional climbing,
15 stooping, bending kneeling, crouching, and crawling, frequent balancing, occasional exposure to
16 moving machinery, and no exposure to heights.  A.R. 281-282.  In his decision, ALJ Kennett
17 specifically noted Dr. Gerson's proffered limitations, stating "[t]he doctor also provided that he has no
18 manipulative limitations but, due to decreased sensation, he said that the claimant should avoid heights
19 and moving machinery."  A.R. 27.  He afforded Dr. Gerson's opinion great weight, finding it consistent
20 with the objective medical evidence.  A.R. 27.   He did not explicitly reject Dr. Gerson's assessed
21 limitations against moving machinery or avoiding heights.  AR 27.

22 ALJ Kennett stated that in assessing the evidence concerning Plaintiff's physical residual
23 functional capacity, he afforded greatest weight to the findings and opinion of Dr. Lagstein, a board-
24 certified internist, who performed a consultative examination of Plaintiff.  A.R. 29.  He found Dr.
25 Lagstein's opinion to be consistent with the medical evidence, including the objective findings, and
26 found that it was supported by evidence demonstrating relatively normal physical findings following a
27 thorough examination of the Plaintiff.  A.R. 30.  He specifically noted that Dr. Lagstein's neurological
28 examination of Plaintiff did not reveal any focal or motor deficits and that his sensory examination was

consistent with mildly diminished pinprick and light touch in both lower extremities. A.R. 29. The ALJ stated that:

> Dr. Lagstein provides that the claimant has no manipulative limitations as he can reach overhead, perform all other reaching, handle, finger feel, and push/pull continuously. He also indicates that the claimant can operate foot controls continuously. Dr. Lagstein states that the claimant can frequently climb ramps and stairs, climb ladders and scaffolds, and balance and that he can occasionally stoop, kneel, crouch and crawl.

A.R. 30. ALJ Kennett further stated that "[d]espite the claimant's diabetic neuropathy, alleged back pain and sciatica, and alleged urinary problems, no treating physician's findings contradicted Dr. Lagstein's essentially normal findings on neurologic examination of the claimant." A.R. 30.

The ALJ found Dr. Gerson's opinion consistent with Dr. Lagstein's opinion with regard to clinical findings. He found that the opinions differed, however, with regard to the severity of Plaintiff's decreased sensation and the limitations it imposed. Finding some discrepancy, ALJ Kennett afforded Dr. Lagstein greater weight. Because the ALJ explained why he afforded Dr. Lagstein's opinion greater weight–because it is supported by the objective findings and by evidence demonstrating relatively normal physical findings- the reason why he rejected Dr. Gerson's limitations can be inferred–because the record does not support Dr. Gerson's opinion with regard to the severity of Plaintiff's decreased sensation.

In support of his decision, the ALJ noted Loretta Nye's October 25, 2006 assessment, which "agreed with Dr. Gerson's assessment, however she changed the claimant's avoidance of heights from never to occasional." *Id*. In so doing, Ms. Nye indicated that the alleged severity in Plaintiff's functional limitations cannot be fully supported by the overall data and, similar to Dr. Gerson, she found Plaintiff to be only partially credible. A.R. 277, 289-90. ALJ Kennett made a similar finding as to Plaintiff's credibility stating that "[a]lthough inconsistent information provided by the claimant may not be the result of a conscious intention to mislead, nevertheless the inconsistencies suggest that the information provided by the claimant generally may not be entirely reliable." A.R. 31. *See Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995) (finding that in weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work records, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains); *see*

*also Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding that an ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain testimony when determining residual functional capacity).

In addition, ALJ Kennett cited Dr. Norris' finding that "[a]lthough pt has peripheral neuropathy to lower extremities, pt can perform tasks that allow him to sit at a desk." A.R. 398. Furthermore the record shows that Dr. Rucker found that Plaintiff "has decreased sensation but [is] able to elucidate pain." A.R. 301. After reviewing the record as a whole, it is clear that ALJ Kennett considered Dr. Gerson's proffered limitations and implicitly rejected them because they were not consistent with the record. The Court therefore finds that the ALJ's decision is supported by substantial evidence in the record.

**B.  ALJ Kennett did not err by failing to determine whether alcoholism was a contributing factor material to the determination of disability**

Plaintiff argues that the ALJ failed to determine whether alcoholism was a contributing factor material to the determination of disability. Pursuant to the Social Security Act, "[a]n individual shall not be considered to be disabled for purposes of this chapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." *See* 42 U.S.C. §§ 423(d)(2)(C); 1382c(a)(3)(J). If the Commissioner finds the claimant disabled and also has evidence of drug addiction or alcoholism, the Commissioner must determine whether the claimant's drug addiction or alcoholism is a contributing factor material to the determination of disability. *See* 20 C.F.R. §§ 404.1535(a); 416.935(a). Only after finding the claimant disabled does the ALJ engage in the materiality analysis. *See Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001).

Here, after considering Mr. Meneses' impairments, determining his residual functional capacity, and applying the Medical-Vocational Rule 201.24, ALJ Kennett found that the Plaintiff was not disabled. He specifically stated:

> I am not persuaded that [plaintiff] is "disabled." But even if I were persuaded that the claimant was "disabled," his alcoholism would be a contributing factor material to such a finding of "disability," and he could not be considered to be "disabled" in accordance with the intent of Congress...".
> . . .

14

> In this case, I cannot find that the claimant has met his burden of proving that he is "disabled." Moreover, even if it were assumed, *arguendo*, that the claimant had met his burden of proving that he were "disabled," the greater weight of the evidence would show that the claimant's disability was a consequence of his alcohol abuse, and that his alcohol abuse would be a contributing factor material to any finding of "disability" for the claimant.

A.R. 25. Since the ALJ did not find Mr. Meneses disabled, Plaintiff is incorrect in arguing that the ALJ found Plaintiff's alcoholism the cause of his disability. It was only in his extraneous statement, in *arguendo*, that the ALJ suggested that even if Plaintiff was found to be disabled, his alcoholism would be a contributing factor.

Because it is clear that a plaintiff's alcoholism does not factor into the disability determination unless the ALJ actually finds disability, the ALJ was not required to engage in the materiality analysis. *See Parra v. Astrue* 481 F.3d 742, 746-47 (9th Cir. 2007) (finding that after determining that a claimant is disabled, the ALJ must then consider whether alcoholism contributed to that disability). The Court therefore finds that the *arguendo* statements made by the ALJ are extraneous statements constituting harmless error. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190. 1197 (9th Cir. 2004) (holding that, as long as an ALJ's determinative conclusions are supported by substantial evidence, extraneous and even erroneous statements in his decision are harmless error).

## **CONCLUSION**

Having reviewed, considered and weighed both the evidence that supports and the evidence that detracts from the ALJ's conclusion, the Court finds the ALJ's decision that Plaintiff has the residual functional capacity to perform sedentary work is supported by substantial evidence. The Court further finds that the ALJ's finding that Plaintiff is not disabled is supported by substantial evidence in the record and that he did not err by failing to determine whether alcoholism was a contributing factor material to the determination of disability. Accordingly,

. . .

. . .

. . .

. . .

. . .

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Reversal and Remand (#18) be **denied**, and that the Defendant's Cross Motion to Affirm (#21) be **granted**.

## NOTICE

Under Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. Appeals may been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). Failure to file objections within the specified time or failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 17th day of September, 2014.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge